UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA HIRSHMAN,<br><br>                                *Plaintiff,*<br><br>    -against-<br><br>DON FRANZEN,<br><br>                                *Defendant.* | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff Linda Hirshman ("Hirshman"), by and through her undersigned counsel, alleges as and for her Complaint against Defendant Don Franzen ("Defendant"):

**NATURE OF THE ACTION**

1. This action stems from Defendant's tortious interference with Hirshman's business relations by, among other things, making knowingly false and malicious assertions to injure Hirschman's business and contractual relationships.

2. Hirshman is a well-known and best-selling author. In 2015, she authored and published *Sisters in Law*, an account of the careers of the first two women to serve as justices of the Supreme Court, Sandra Day O'Connor and Ruth Bader Ginsburg, and how they have advanced the cause of women's rights (the "Book").

3. Proving the saying, "if I can't get what I want, then no one else can," Defendant knew he did not have all of Hirshman's rights in and to the Book (i.e., the motion picture, television, and merchandising rights to the Book), and yet he maliciously has been engaging in a campaign to threaten, intimidate, and commence legal proceedings against Hirshman and any individuals or entities that attempted to purchase/purchased Hirshman's rights to her own Book.

**THE PARTIES**

4. Plaintiff Hirshman is an individual domiciled in the State of Arizona, but lives part-

74379415.2

time in New York City.

5.      Upon information and belief, Defendant resides in the State of California.  Upon further information and belief, Defendant is an entertainment and business litigation attorney, and a principal of the Law Offices of Funsten & Franzen a/k/a Law Offices of Don Erik Franzen, located at 9595 Wilshire Boulevard, Suite 305, Beverly Hills, California 90212-2500.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) since the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  Defendant is subject to the jurisdiction of this Court since, among other things: the property at issue, the Book, was commissioned and produced in the State of New York; Defendant transacts business in the State of New York by wrongfully having commenced legal proceedings and practicing law in the State of New York; Defendant committed tortious acts in the State of New York by threatening Hirshman, wrongfully commencing legal proceedings against Hirshman, and tortuously interfering with Hirshman's business relations in the State of New York; and Defendant committed a tortious act by causing injury to Hirshman during the time she lived in the State of New York, and therefore should reasonably expect this act to have consequences in the State of New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and/or (c)(3), for the reasons set forth more fully above.

## FACTUAL ALLEGATIONS

8.      While living in New York, Hirshman wrote and published the Book.  Hirshman therefore owned all of the right, title, and interest of every kind and nature whatsoever in and to the Book, such as:

2

- motion picture rights based on the Book;

- television rights based on the Book;

- merchandising rights based on the Book;

- print audio and electronic publication rights based on the Book;

- non-dramatic recital rights or written sequels based on the Book; and

- dramatic/stage or adaption rights to produce a play based on the Book.

9. It is widely recognized, well-settled, and standard in the entertainment industry that a book author's grant of dramatic/stage rights, such as to produce a play based on her book, does not include motion picture, television, merchandising, print audio, electronic publication, non-dramatic recital rights or allied and ancillary rights therein to the book.

10. Indeed, the Writers Guild of America Basic Agreement explicitly recognizes that an author, such as Hirshman, retains dramatic/stage rights to her work as separated rights, separate and apart from an author (Hirshman) granting any rights to television or motion picture productions based on her work.

11. Upon information and belief, Defendant – based on his decades-long experience as an entertainment attorney – has known and does know that a grant of dramatic/stage rights, such as to produce a play based on a book, does not include motion picture, television, merchandising, print audio, electronic publication, non-dramatic recital rights or allied and ancillary rights therein to the book.

12. In the Spring of 2017, Defendant and non-party Elizabeth Weber ("Weber") engaged in negotiations with Hirshman solely to acquire the limited dramatic/stage rights to adapt the Book *as a play*, produce *the play*, and make/produce adaptations or versions *of the play* (the "Limited Stage Rights").

3

13. In or about June 2017 Defendant, an entertainment and litigation attorney, drafted an agreement for Weber and him to purchase and obtain the Limited Stage Rights *to a play* based on the Book – as opposed to rights to the Book. By e-mail dated June 12, 2017, Defendant sent this agreement to Hirshman, conceding in his e-mail that the agreement was "to acquire the right to adapt [the Book] *as a play*." (Emphasis added.) Defendant, Weber, and Hirshman entered into and signed an agreement, made as of June 1, 2017, where Hirshman solely granted Defendant and Weber the Limited Stage Rights <u>*to a play*</u> *based on the Book* for $1,000 and 25% of total author royalties (the "Limited Stage Agreement"). Accordingly, both Defendant and Hirshman were fully aware of and knew what they had agreed to (that Defendant only had Limited Stage Rights *to the play, not to the Book*), and what they had not agreed to (all of the other rights *to the Book*) – especially since Defendant had drafted the Limited Stage Agreement.

14. Accordingly, at all relevant times, Defendant has been and is fully aware and knows that: (i) Hirshman continued to retain ownership of all her *other* rights, title, and interest in and to her Book, such as motion picture, television, merchandising, print audio, electronic publication, non-dramatic recital rights or allied and ancillary rights therein to the Book; and (ii) Defendant neither owned nor had paid for any/all of the other the rights to Hirshman's Book, such as motion picture, television, merchandising, print audio, electronic publication, non-dramatic recital rights or allied and ancillary rights therein to the Book.

15. In 2018, and well within the rights she had reserved to her Book, Hirshman engaged in negotiations to enter into a book option/purchase agreement with a production company owned by actress Alyssa Milano ("Milano"), Peace by Peace Productions, Inc. ("PBPP"). Such agreement provided for Hirshman solely to grant PBPP the rights to motion picture, television, merchandising, and the allied and ancillary rights therein *based on the Book*, and did not provide

4

for Hirshman to grant PBPP any of the Limited Stage Rights to adapt the Book *as a play*.

16. From 2018 to the present day, Defendant intentionally and willfully has set out to destroy Hirshman's and her business relations' ability to use, sell, or purchase all of the other rights in and to her Book (excluding the Limited Stage Rights), such as motion picture, television, merchandising, print audio, electronic publication, and non-dramatic recital rights to the Book. The unlawful means Defendant has employed include threats, harassment, intimidation, a campaign of disparaging and spurious letters, and by wrongfully commencing legal proceedings to, among other things, inflict harm on Hirshman and her business relationships.

17. Defendant's wrongful conduct not only has been directed at Hirshman, but also individuals and production companies with whom Hirshman has or sought to have a business relationship with.

18. Defendant found out about Hirshman's negotiations with PBPP, and sent a May 2, 2018 letter to Milano's husband entitled "NOTICE TO CEASE AND DESIST." In this letter, despite acknowledging that Defendant and Weber only "hold the dramatic rights to the [Book], Defendant falsely claimed that Hirshman had agreed to grant Defendant and Weber "all motion picture rights…all radio, television, television motion picture and other television rights" to the Book. Defendant wrongfully demanded in this letter that not only Milano's husband Dave Bugliari ("Bugliari"), but Milano, PBPP, PatMa Productions, LLC ("PatMa")[1], Nina Tassler ("Tassler")[2], Denise Di Novi ("Di Novi")[3] cease and desist from making a limited television series based on the

---

[1] PatMa is a production company that had expressed interest in purchasing the rights to motion picture, television, merchandising, and the allied and ancillary rights therein based on the Book, excluding the Limited Stage Rights.

[2] Tassler is a member of PatMa.

[3] Di Novi is a member of PatMa.

5

74379415.2

Book, prepare a press release "retracting the claim you are developing a limited series," transfer to Defendant and Weber "any and all considerations you have received or will receive in relation to the [B]ook." Defendant maliciously threatened in this letter to "bring legal action for mandatory and prohibitory injunctions…and for actual and punitive damages for defamation, trade libel, tortious interference with contract and economic advantage."

19. Defendant's statements in his May 2, 2018 letter are false, disparaging and derogatory. Defendant's statements were an attempt to expose Hirshman to public contempt, ridicule, aversion or disgrace and/or induce an evil opinion of her in the minds of right-thinking persons, such as Bugliari.

20. Moreover, Defendant's representations to Hirshman's business relations that he owned the rights to exploit Hirshman's Book in all media, television and motion pictures were knowingly false and designed to defraud Hirshman out of her rights to the Book, since Defendant was fully aware that he only had Limited Stage Rights.

21. Indeed, Defendant's statements in his May 2, 2018 letter were made with wanton and malicious disregard for the truth of those statements.

22. Defendant's May 2, 2018 letter has caused and continue to cause injury to the name, business and reputation of Hirshman, Bugliari, Milano, PBPP, Tassler, Di Novi and PatMa.

23. Compounding his wrongful conduct, Defendant also made the same demands and threats in his May 2, 2018 letter to Hirshman and her attorney during the time Hirshman was living in New York.

24. By e-mail dated May 7, 2018, Defendant threatened to take Milano to court, falsely asserting that Milano had no right to go forward with a movie/television production based on the Book – despite the fact that Defendant only had Limited Stage Rights *to the play*.

25. By letter dated June 4, 2018 to Milano's counsel, Defendant falsely claimed that Hirshman had agreed to grant Defendant and Weber "*exclusive rights to exploit the [Book]* by way of a play or *through other media, including television*," that the "only rights specifically reserved by Hirshman are print publication rights," that "Hirshman cannot grant tv or movie rights to anyone else and her purported agreement with Milano is invalid and void," and that Defendant and Weber "have the *exclusive rights to television and film based on the [Book]*." (Emphasis added.)

26. Upon information and belief, Defendant's assertions in his May 2 and June 4, 2018 letters were knowingly false and made to induce, *inter alia*, Hirshman and PBPP into not entering into and signing the book option/purchase agreement for the rights to motion picture, television, merchandising, and the allied and ancillary rights therein based on the Book, excluding the Limited Stage Rights.

27. Further, upon information and belief, Defendant's correspondence set forth above was knowingly false, made with malice with the intent to harm or with reckless disregard of the truth, without regard to its consequences, such that a reasonably prudent person should anticipate that damage to another will naturally follow from it.

28. During a meeting on October 2, 2018 between, among others, Defendant, Weber, and Tassler, Defendant tried to intimidate Tassler, made her uncomfortable through his actions and words, and asserted that Tassler "did not have the rights [she] thought [she] had" – despite the fact that Defendant only had Limited Stage Rights *to the play*

29. By e-mail dated December 5, 2018 to PatMa's counsel, Defendant continued to falsely and maliciously assert that Hirshman had agreed to grant the rights to television and/or motion pictures in or to the Book – clearly in an attempt to induce PatMa not to enter into an agreement with Hirshman for the other rights in and to her Book (excluding the Limited Stage

7

Rights), such as motion picture, television, merchandising.

30.     Defendant's wrongful and malicious actions, set forth above, induced or otherwise caused Hirshman and PBPP not to enter into an agreement with each other for the other rights to her Book (*e.g.*, the rights to motion picture, television, merchandising, and the allied and ancillary rights therein), excluding the Limited Stage Rights.

31.     Thereafter, in 2020, Defendant learned that Hirshman, PatMa, and another production company owned by Milano, AJM Productions Inc. ("AJM"), had entered into negotiations for Hirshman's rights to the motion picture, television, merchandising, and the allied and ancillary rights therein based on the Book, expressly excluding the Limited Stage Rights.

32.     In fact, and well within Hirshman's right, title, and interest of *every other kind and nature* in and to her Book, Hirshman, PatMa, and AJM had entered into a modified quitclaim book option purchase agreement, dated as of January 16, 2019, whereby Hirshman properly quitclaimed to PatMa and AJM the rights to motion picture, television, merchandising, and the allied and ancillary rights therein *in and to the Book*, and the agreement expressly provided that such rights excluded the Limited Stage Rights as expressly defined in the Limited Stage Agreement (the "Purchase Agreement").

33.     Despite this fact, Defendant wrongfully and maliciously continued to inflict harm not only on Hirshman, but also on the individuals and companies with whom Hirshman has a business relationship.

34.     By e-mail dated June 17, 2020 to "the last known legal representative of Linda Hirshman," Defendant stated that he had learned that "Milano and her producers are soliciting screenwriters at this time for a tv series *based on the [B]ook*." (Emphasis added.)  In this e-mail, Defendant wrongfully threatened Hirshman's attorney with arbitration proceedings "unless within

8

fourteen (14) days of this email we receive satisfactory evidence that no such series has been or is authorized."

35.    In another e-mail dated June 17, 2020 to "the last known legal representative of Alyssa Milano," Defendant falsely claimed that a tv series based on the Book would be a violation of his agreement with Hirshman, and wrongfully asserted that his e-mail was "notice to you and Ms. Milano that unless we receive satisfactory evidence that no such series has been or is authorized within fourteen (14) days of this email, arbitration proceedings will be commenced against Ms. Hirshman pursuant to her agreement with us to declare her agreement with Milano agreement void and invalid, and for damages, attorneys' fees, and such other relief as may be appropriate.  Further, we reserve the rights to commence legal proceedings against Ms. Milano and those acting with her for inducement of breach of contract, interference with prospective business advantage, and all other causes of action."

36.    Compounding his wrongful conduct, Defendant also made these same demands and threats to Hirshman during the time Hirshman was living in New York.  Defendant also demanded that Hirshman agree to permit Defendant to "step into Milano's shoes" and get her rights, a self-acknowledgement by Defendant that he never had and did not have the rights to motion picture, television, merchandising in and to the Book.

37.    Upon information and belief, Defendant's assertions in his June 17, 2020 e-mails and to Hirshman were knowingly false, made with malice with the intent to harm or with reckless disregard of the truth, without regard to its consequences, such that a reasonably prudent person should anticipate that damage to another will naturally follow from it.

38.    Further, upon information and belief, Defendant's June 17, 2020 e-mails were knowingly false, made with malice with the intent to harm or with reckless disregard of the truth,

9

without regard to its consequences, such that a reasonably prudent person should anticipate that damage to another will naturally follow from it.

39. Defendant's actions were for the sole purpose of inflicting harm on Hirshman, Milano, PatMa, and AJM. Defendant clearly was inducing or otherwise causing Hirshman, PatMa, and AJM not to perform the Purchase Agreement, to frustrate the purpose of such agreement, and/or to render performance of such agreement impossible.

40. On or about July 10, 2020, Defendant wrongfully commenced arbitration proceedings against Hirshman in New York City, falsely claiming that Hirshman had granted Sisters Projects LLC "*the right to exploit her [Book] in all media, including theater, television and film*" – in clear contravention of the fact that Defendant only, and solely, had been granted Limited Stage Rights. (Emphasis added.)

41. As a result of this on-going, multi-year, intentional, and malicious campaign of Defendant, Hirshman has been damaged. Among other things, Hirshman's business relationships with Milano, PBPP, PatMa, AJM, Tassler, and Di Novi have been damaged as a direct result of Defendant's continuous stream of knowingly false and disparaging statements and threats, as a result, performance of the Purchase Agreement has been frustrated and/or delayed.

42. In addition to the above relationships, there have been serious disruptions in the business affairs of Hirshman, Milano, PBPP, PatMa, AJM, Tassler, and Di Novi due to the wrongful and malicious conduct of Defendant.

43. Indeed, Hirshman and her business relations have spent substantial time, money, and resources in establishing business relationships with each other that have been disrupted by Defendant.

44. Simply stated, there would be no other reason for the above loss of business, time,

money, and resources to Hirshman, or to the delays or prevention of new opportunities that would have been beneficial to Hirshman and her business relations, but for Defendant's knowingly false assertions, threats, intimidation, and commencement of legal proceedings.

45. Defendant's wrongful and malicious actions have diminished the value of, among other rights to the Book, the motion picture, television, merchandising rights to the Book.

46. In addition, Defendant's wrongful and malicious actions have caused Hirshman, Milano, PBPP, PatMa, AJM, Tassler, and Di Novi to incur, and continue to unnecessarily incur, fees, costs, and expenses – not to mention the time lost in the exercise of their properly granted rights.

47. Defendant's conduct also has caused Hirshman and her business relations to have lost market share and revenues flowing therefrom regarding the television series based on the Book, as well as Hirshman's print audio and electronic publication rights to the Book.

48. In addition, Defendant's injurious conduct intentionally has clouded title to, among other things:

- the motion picture rights based on the Book;
- the television rights based on the Book;
- the merchandising rights based on the Book;
- the print audio and electronic publication rights based on the Book; and
- the non-dramatic recital rights or written sequels based on the Book.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Tortious Interference with Business Relations)**

49. Hirshman repeats and realleges each of the foregoing allegations as if fully set forth herein.

50. Defendant's conduct, as set forth more fully above, was unlawful or for the sole purpose of inflicting intentional harm on Hirshman and her business relationships.

78. As set forth more fully above, Defendant was aware of Hirshman's business relations with a number of individuals and entities, was aware of Hirshman's agreement with PatMa and AJM, and was aware that Hirshman and her business relations spent substantial time and resources in establishing business relationships with each other.

51. Specifically, Defendant knew of Hirshman's negotiations with PBPP and the Purchase Agreement entered into with AJM and PatMa, and made false and malicious statements with the sole intent to injure Hirshman, Milano, PBPP, PatMa, AJM, Tassler, and Di Novi.

52. Defendant's conduct was directed at the individuals and entities with whom Hirshman had or sought to have a relationship with, including Milano, PBPP, PatMa, AJM, Tassler, and Di Novi.

53. As set forth more fully above, Defendant's conduct was malicious and not motivated by financial gain.

54. Defendant's interference with Hirshman's unique business and economic relations was accomplished by wrongful means and/or with Defendant's sole purpose of harming the Hirshman as it was directed at Hirshman's business relationships.

55. Hirshman had a reasonable expectation that her business and economic relations would not be impeded by Defendant's malicious and wrongful interference.

56. But for Defendant's wrongful conduct, Hirshman's business with Milano, PBPP, PatMa, AJM, Tassler, and Di Novi would have not been terminated and/or disrupted.  Instead, as result of Defendant's wrongful interference, Hirshman's business relations were terminated and/or disrupted.

57. As set forth above, Defendant wrongfully and tortiously interfered with Hirshman's business relations.

58. As is also set forth above, intentionally and for the improper purpose of harming Hirshman, Defendant wrongfully has tortiously interfered with Hirshman's business relationships.

59. Hirshman has lost actual and prospective business relationships, been deprived of future business dealings, lost business contacts and referrals, and has suffered damage to her reputation due to the actions of Defendant.

60. The conduct described herein constituted a tortious, unreasonable, and unprivileged interference with Hirshman's business relations through the use of wrongful and unfair means, as a direct result of which Hirshman has suffered actual injury. Defendant's actions were deliberately intended to cause damage to Hirshman.

61. Hirshman entitled to recover compensatory damages for Defendant's tortious interference in an amount to be determined at trial, but which is believed to be not less than $100,000.

WHEREFORE, Hirshman respectfully requests that judgment be entered as follows:

(i) On the First Cause of Action, for compensatory damages in an amount to be determined at trial, but which is believed to be not less than $100,000.00;

(ii) Awarding Hirshman her attorneys' fees, costs and disbursements incurred in this action;

(iii) Granting pre-judgment interest on all sums awarded at the rate prescribed by law; and

(iv) Granting such other and further relief as this Court deems just and proper.

74379415.2

Dated: New York, New York
August 11, 2020

                                             **POLSINELLI PC**
                                             *Attorneys for Plaintiff Linda Hirshman*

By: _____
       Gabriel Levinson
       Darnell S. Stanislaus
       600 3rd Avenue, 42nd Floor
       New York, NY 10016
       T: 212.684.0199
       glevinson@polsinelli.com
       dstanislaus@polsinelli.com

74379415.2