UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA HIRSHMAN,

Plaintiff,

-against-

DON FRANZEN,

Defendant.

Case No. 20 Civ. 06322 (GHW)

**<u>ORAL ARGUMENT REQUESTED</u>**

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
<u>HIS MOTION TO COMPEL ARBITRATION AND STAY THIS MATTER</u>**

**BAILEY DUQUETTE P.C.**
David I. Greenberger, Esq.
Shashi K. Dholandas, Esq.
104 Charlton Street, Suite 1W
New York, NY 10014
O: (212) 658-1946 ext. 204
E: david@baileyduquette.com
E: shashi@baileyduquette.com

*Attorneys for Defendant Don Franzen*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

    I.   THE OPERATIVE AGREEMENT AND THE ARBITRATION CLAUSE SET FORTH THEREIN ......... 4

    II.  THE COMPLAINT'S ALLEGATIONS ARISE OUT OF, AND DIRECTLY CONCERN, THE CONTRACT ................................................................................................................ 6

ARGUMENT ...................................................................................................................... 12

    I.   THE LEGAL STANDARD FOR A MOTION TO COMPEL ARBITRATION ................................... 12

    II.  THE COURT SHOULD COMPEL HIRSHMAN'S ALLEGATIONS TO ARBITRATION SO THAT AN ARBITRATOR CAN DETERMINE QUESTIONS OF ARBITRABILITY ........................................ 14

        A.  THE CONTRACT INCORPORATES THE AAA RULES ........................................................ 15

        B.  THE CONTRACT CONTAINS BROAD LANGUAGE THAT EXPRESSES AN INTENTION TO ARBITRATE ALL ISSUES RELATED TO THE CONTRACT ................................................. 17

        C.  THE CONTRACT'S ARBITRATION CLAUSE DEMONSTRATES THAT THE SIGNATORIES INTENDED FOR THE ARBITRATOR TO DETERMINE THE QUESTION OF ARBITRABILITY  18

    III.  THE PRODUCERS' ASSIGNMENT OF THE CONTRACT TO SISTERS PROJECT LLC DOES NOT CHANGE THE FACT THAT IT IS FOR THE ARBITRATOR TO DETERMINE ARBITRABILITY ... 19

    IV.  IF THE COURT BELIEVES IT SHOULD ADJUDICATE ARBITRABILITY, IT SHOULD STILL DETERMINE THAT THE PARTIES' DISPUTE IS SUBJECT TO ARBITRATION ......................... 22

    V.  THE COURT SHOULD STAY THE MATTER ..................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page No.**

**CASES**

*Architects, LLC v. Rales,*
518 F. App'x 20 (2d Cir. 2013) ................................................................. 17

*Arrigo v. Blue Fish Commodities, Inc.,*
704 F. Supp. 2d 299 (S.D.N.Y. 2010) ....................................................... 21

*Arshad v. Transportation Systems, Inc.,*
15 Civ. 2138, 2016 WL 1651845 (S.D.N.Y. Apr. 25, 2016)...................... 21

*Bensadoun v. Jobe-Riat,*
316 F.3d 171 (2d Cir. 2003).......................................................................13

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.,*
974 F. Supp. 293 (S.D.N.Y. 1997) ............................................................ 23

*Briggs v. Eden Council for Hope & Opportunity,*
19 Cal.4th 1106 (1999) ................................................................................ 7

*Campaniello Imports Ltd. v. Saporiti Italia S.p.A.,*
117 F.3d 655 (2d Cir. 1997) ...................................................................... 21

*Carvel Corp. v. Noonan,*
3 N.Y.3d 182 (N.Y. 2004) ........................................................................... 2

*Citadel Servicing Corporation v. Castle Placement, LLC,*
431 F. Supp. 3d 276 (2019)...........................................................13, 14, 15, 18

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.,*
58 F.3d 16 (2d Cir. 1995).......................................................................... 22

*Contec Corp. v. Remote Sol., Co., Ltd.,*
398 F.3d 205 (2d Cir. 2005) ............................................................... *passim*

*Gwathmey Siegel Kaufman & Assocs. Paduano v. Express Scripts, Inc.,*
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ........................................................ 17

*Henry Schein Inc. v. Archer & White Sales Inc.,*
--- U.S. ----, 139 S. Ct. 524 (2019) .................................................... 15, 16

*Holzer v. Mondadori*,
  No. 12 Civ. 5234, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013)............................................21

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ............................................................................................................ 14, 15

*In re Am. Express Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011)......................................................................................................15

*In Re Lowenthal*,
  199 A.D. 39  (1st Dep't 1921)...................................................................................................19

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)......................................................................................................22

*Katsoris v. WME IMG, LLC*,
  237 F. Supp. 3d 92 (S.D.N.Y. 2017) ................................................................................... 17, 25

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015)......................................................................................................24

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
  390 F.3d 194 (2d Cir. 2004)......................................................................................................14

*Lombardo v Dr. Seuss Enterprises, L.P.*,
  16 Civ. 9974, 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017).........................................................2

*Marmet Health Care Ctr., Inc. v. Brown*,
  565 U.S. 530 (2012)..................................................................................................................13

*Mobile Real Estate, LLC v. NewPoint Media Group, LLC*,
  --- F.Supp.3d ----, No. 19-cv-11475, 2020 WL 2521451 (S.D.N.Y. May 18, 2020)........ *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .....................................................................................................................13

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*,
  770 F.3d 1010 (2d Cir. 2014)....................................................................................................15

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996)......................................................................................................18

*Pincaro v. Glassdoor, Inc.*,
  No. 16-CV-6870, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017)..............................................14

*Ryan v. JPMorgan Chase & Co.*,
    924 F. Supp. 2d 559 (S.D.N.Y. 2013) ................................................................. 14

*Schneider v. Kingdom of Thailand*,
    688 F.3d 68 (2d Cir. 2012) ................................................................................... 16

*Stations W., LLC v. Pinnacle Bank of Oregon*,
    CIV. 06-1419-KI, 2007 WL 1219952 (D. Or. Apr. 23, 2007) ............................... 19

*Time Warner City Cable v. Adelphi Univ.*,
    27 A.D.3d 551 (2d Dep't 2006) ...................................................................... 21, 23

*Wells Fargo Advisors, LLC v. Sappington*,
    884 F.3d 392 (2d Cir. 2018) .................................................................................. 18

*Wire Service Guild, Local 222, Newspaper Guild, AFL–CIO v. United Press Int'l, Inc.*,
    623 F.2d 257 (2d Cir. 1980) .................................................................................. 13

## STATUTES

9 U.S.C. § 3 .......................................................................................................... 1, 24

9 U.S.C. § 4 ..................................................................................................... *passim*

Defendant Don Franzen ("Franzen") respectfully submits this Memorandum of Law in support of his Motion to Compel arbitration and to Stay this matter pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA").

## PRELIMINARY STATEMENT

The allegations asserted in Plaintiff Linda Hirshman's ("Hirshman") Complaint against Franzen are subject to a binding arbitration provision, and they should have been brought, and certainly should be adjudicated, before the American Arbitration Association ("AAA"), where an arbitration concerning the very issues detailed therein is already pending.

Hirshman's Complaint focuses on Franzen's conduct and the parties' respective rights in relation to a contract that Franzen and third-party Elizabeth Weber ("Weber"), on the one hand, and Hirshman, on the other, entered into, whereby Franzen and Weber acquired a grant to, *inter alia,* the "exclusive dramatic rights" in Hirshman's book *Sisters in Law,* as well "as other rights in [that] Work." (hereinafter, the "Contract", a copy of which is attached to the accompanying Declaration of Don Franzen ("Franzen Decl.") as Ex. 1).

As the evidentiary facts detailed herein demonstrate, Franzen learned that Hirshman was taking actions that potentially could, and then actually did, impair the rights Hirshman had granted to Franzen and Weber, in violation of her contractual obligations.  In response thereto, Franzen acted, first on behalf of himself and Weber, and thereafter also on behalf of the LLC to which Franzen and Weber assigned their rights under the Contract, to protect and enforce the very rights the Contract conveyed to them (Franzen is a member and corporate Secretary of the LLC, a producer for it, and its attorney).  Franzen did so by, among other things, disseminating privileged cease and desist notices, sending privileged settlement communication, and initiating an arbitration pursuant to the Contract's arbitration provision.  Hirshman specifically alleges that

1

these very acts – which attorneys like Franzen do on a daily basis – somehow constitute tortious interference with her business relationships.[1]

Before the gross substantive failings of Hirshman's claims can be considered, the issue of whether they must be arbitrated or not must first be adjudicated.   In this regard, the underlying Contract expressly requires that "[a]ny claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration before one arbitrator, to be held under the rules and regulations of the American Arbitration Association in New York, New York."  (Franzen Dec., Ex. 1 at ¶ 14). The law is well-settled that this arbitration provision means that an arbitrator operating pursuant to the AAA Rules must determine the question of arbitrability.  *See, e.g., Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).  This fact alone should resolve the Motion to Compel in Franzen's favor.

These principles hold true even with Franzen having assigned his rights to Sisters Project LLC.  First, because the arbitration provision is integral to Franzen and he remains a "party aggrieved by" Hirshman's failure to arbitrate.  9 U.S.C. § 4.  Second, because even if the Court treated Franzen simply as a non-signatory to the Contract, "where a party seeking to avoid arbitration [i.e., Hirshman] is a signatory to an arbitration agreement which incorporates rules

---

[1] In truth, the alleged acts cannot constitute tortious interference with business relationship.  This is because, among other reasons, "as a general rule, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (N.Y. 2004).  By example, in *Lombardo v Dr. Seuss Enterprises, L.P.,* the court considered allegations similar to those here, and held that "[t]he cease-and-desist letters reflect defendant's belief – based on publicly available information – that the Play likely infringed on defendant's intellectual property. Whether that belief was right or wrong, defendant did not send the letters for the sole purpose of injuring plaintiffs. For this reason alone, plaintiffs' tortious interference claim fails. 16 Civ. 9974 (AKH), 2017 WL 1378413, at *5 (S.D.N.Y. Apr. 7, 2017).

that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator." *Mobile Real Estate, LLC v. NewPoint Media Group, LLC*, --- F.Supp.3d ----, No. 19-cv-11475, 2020 WL 2521451 at * 13 (S.D.N.Y. May 18, 2020). Franzen, as a member of, producer to, and attorney for Sisters Project LLC, and Hirshman, had a sufficient relationship to each other and their respective rights under the Contract – which is what the Complaint concerns – such that this Court can comfortably grant the Motion to Compel.

Separately, this litigation should be stayed, at a minimum, pending a determination of these arbitrability issues by the arbitrator in the active AAA arbitration. Further, if the arbitrator deems certain claims or issues to be non-arbitrable, a further stay of litigation is still appropriate pending the Arbitrator's resolution of the related claims.

For these reasons, and those set forth herein, Franzen asks to the Court to grant his Motion to Compel and Stay the Arbitration.

## STATEMENT OF FACTS

Based in Beverly Hills, California, Franzen is a successful entertainment attorney with forty-five years of experience. (Franzen Decl., ¶3). His legal practice covers many aspects of the entertainment industry, with an emphasis on the music industry. He lectures on entertainment law and is an adjunct professor teaching law and business practice in the music industry at the University of California, Los Angeles. Franzen is also a fellow at the University of Southern California Institute for the Humanities, and the legal affairs editor for the Los Angeles Review of Books. (Franzen Decl., ¶ 3). From time-to-time, Franzen is personally involved in entertainment industry projects that interest him. (Franzen Decl., ¶ 4).

Weber is an experienced entertainment producer, business advisor, and advocate for the arts, who has produced creative stage shows at major venues and concert halls across the world. (Franzen Decl., ¶ 5).

## I.    The Operative Agreement and the Arbitration Clause Set Forth Therein

On June 1, 2017, Franzen and Weber, on the one hand, and Hirshman, on the other, entered into a contract whereby Franzen and Weber acquired a grant to "exclusive dramatic rights" in *Sisters in Law,* as well "as other rights in [that] Work." (Franzen Decl., ¶6, Ex. 1).  *Sisters in Law* profiles the career of Sandra Day O'Connor and Ruth Bader Ginsburg, the first two women to serve as Supreme Court justices.  (Franzen Dec. at ¶ 7).  In exchange, Hirshman received an initial payment of $1,000, and is due to receive 25% of total author royalties, 25% of net receipts from subsidiary rights, plus other consideration as specified in the Contract.  (Franzen Dec., ¶ 6, Ex. 1).

The Contract refers to Franzen and Hirshman collectively as "the Producers".  (Franzen Dec., ¶ 6 and ¶ 8, Ex. 1).  The rights the Contract grants to the Producers "automatically revert" to Hirshman, without any action of any kind by them, unless there is "a First-Class Production of the Play which opens during the option period as extended" (and there was no merger of rights). (Franzen Dec., Ex. 1 at ¶ 5).  On April 2, 2020, Sisters Project LLC paid Ms. Hirshman $5,000 to extend that option at least until June 2022. (Franzen Dec., ¶ 13, Ex. 4).  Thus, its rights under the Contract remain in full force and effect.

Hirshman agreed in the Contract to "not at any time hereafter execute any other agreement in conflict herewith or in any way to sell, dispose of, encumber, or hypothecate any of the rights herein granted to Producers with respect to the Work or any part of the Work, or do or knowingly permit to be done any act or thing by which any of such rights may be impaired."  (Franzen Dec., Ex. 1 at ¶ 7(e)).

Paragraph 14 of the Contract is the Arbitration Clause. It states:

14. ARBITRATION: Any claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration before one arbitrator, to be held under the rules and regulations of the American Arbitration Association in New York, New York. Judgment upon the award rendered may be entered in the highest court of any forum, State or Federal, having jurisdiction. The arbitrator is directed to award to the prevailing party reasonable attorneys' fees, costs and disbursements, including reimbursement for the cost of witnesses, travel and subsistence during the arbitration hearings. Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered by the appropriate court of the forum having jurisdiction.

(Franzen Dec., Ex. 1 at ¶ 14)).

The Contract expressly states that it "shall be construed, interpreted and enforced in accordance with the laws of the State of New York applicable to agreements executed, delivered and to be performed within such State." (Franzen Dec., Ex. 1 at ¶ 15).

Importantly here, in Paragraph 16 of the Contract ("Producer's Rights to Assign"), Hirshman expressly agreed that the "Producers shall have the right freely to assign this Agreement, provided the assignee agrees to be bound by this Agreement." (Franzen Dec., Ex. 1 at ¶ 16).[2]

The Producers "formed a California Limited Liability Company, Sisters Projects [LLC], for the purpose of exploiting the Producers' rights under the Hirshman Agreement" and transferred their rights in the Contract to that entity, effective June 1, 2018. (Franzen Dec., ¶ 10, Ex. 2). The documents filed with the California Secretary of State expressly state that Sister Project LLC's business is "[t]heatrical and media presentations", and that Franzen is its corporate Secretary and agent, and a member who manages it, along with Weber. (Franzen Dec., ¶ 11; the incorporation documents filed with the California Secretary of State are attached to the Franzen Decl. as Ex. 3).

---

[2] Hirshman also agreed to "duly execute, acknowledge and deliver to Producers, or cause to be executed, acknowledged and delivered to Producers, in form approved by Producers, any and all further assignments or instruments that Producers may deem reasonably necessary, expedient or proper to carry out and effectuate the purposes and intent of this Agreement, provided such documents are prepared at the Producers' expense." (Franzen Dec., Ex. 1 at ¶ 9).

Franzen also serves as Sister Projects LLC's attorney and a producer, along with Weber, for it. (Franzen Dec., ¶¶ 12-13).

To date, Sisters Projects has successfully co-produced the play *Sisters in Law* in Phoenix, Arizona (in April 2019 ) and Beverly Hills, California (in September 2019).  (Franzen Dec., ¶ 14).

**II.**      **The Complaint's Allegations Arise Out of, And Directly Concern, The Contract**

On August 11, 2020, Hirshman filed her Complaint in the instant action, in which she alleges a single cause of action against Franzen for tortious interference with business relationship. (The Complaint ("Compl.") is at ECF Doc. No. 1).

The Complaint's allegations directly arise out of, and concern, the Contract.  In this regard, the Complaint alleges that, in the Spring of 2017, Franzen and Weber, on the one hand, and Hirshman, on the other, "engaged in negotiations with Hirshman solely to acquire the limited dramatic/stage rights to adapt the Book *as a play,* produce *the play,* and make/produce adaptations or versions *of the play*", and entered into the Contract on June 1, 2017. (Compl. at ¶¶ 12-13 (emphasis in original)).  In this regard, the Complaint repeatedly and consistently avers that under the Contract, Hirshman "solely" granted the Producers limited rights to a play, and that Franzen, as both: (1) "an entertainment and litigation attorney", and (2) the Contract's drafter, "is fully aware and knows" it.[3] (*See, e.g.* Compl. at ¶¶ 3, 13, 14).

The Complaint alleges that, in 2018, Hirshman "engaged in negotiations to enter into a book option/purchase agreement with a production company owned by actress Alyssa Milano ("Milano"), Peace by Peace Productions, Inc. ("PBPP")", whereby Hirshman would grant PBPP the rights to motion picture, television, merchandising and related rights based on the book, but

---

[3] Hirshman's contention is, as the Contract evidences, patently false.  The Contract grants rights to the Producers well beyond the stage, including by example, motion picture, television, radio and internet rights. (Franzen Dec., Ex. 1 at ¶ 1).

not a play. (Compl. at ¶ 15). Hirshman alleges that she was "well within the right she had reserved to her Book" in the Contract to do so. (Compl. at ¶ 15).

The Complaint alleges that, from 2018 to the present, Franzen "intentionally and willfully has set out to destroy Hirshman's and her business relations' ability to use, sell, or purchase all of the other rights in and to her Book (excluding the Limited Stage Rights), such as motion picture, television, merchandising, print audio, electronic publication, and non-dramatic recital rights to the Book." (Compl. at ¶ 16). Said differently, Hirshman alleges that Franzen engaged in wrongdoing by taking action to: (1) protect the very rights that he asserted the Contract conveyed to himself and Weber, and later Sisters Project LLC; and (2) respond to Hirshman's potential and actual impairment of those rights, in breach of her contractual obligations.

By example, Hirshman raises a May 2, 2018 "NOTICE TO CEASE AND DESIST" letter that Franzen sent to David Bugliari ("Bugliari"), who is Milano's husband and agent. (Compl. at ¶¶ 18-22). Hirshman alleges that Franzen's statements in that Cease and Desist letter "are false, disparaging and derogatory;" were "made with wanton and willful disregard for the truth"; and were "designed to defraud Hirshman of her rights to the Book, since [Franzen] was fully aware that he only had Limited Stage Rights." (Compl. at ¶¶ 19-21; 26-27).

The actual May 2, 2018 Cease and Desist letter Franzen sent reveals that Franzen wrote a litigation protected letter as a California attorney to address issues directly arising out of the Contract.[4] (a copy of the letter is attached as Franzen Dec., Ex. 5). Indeed, Franzen stated that

---

[4] The cease and desist letter is marked as "PRIVILEGED COMMUNICATION SUBJECT TO LITIGATION PRIVILEGE [CIV. CODE § 47(b)]". (Franzen Dec., Ex. 5). Under California law, "communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b), [and] such statements are equally entitled to the benefits of section 425.16," which is California's anti-SLAPP statute. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1115 81 Cal. Rptr. 2d 471, 969 P.2d 564 (1999)

"[t[his office represents Elizabeth Weber and Don Franzen (the undersigned) (together, "the Sisters in Law Producers") who hold the dramatic adaptation rights to the book "Sisters in Law" written by Linda Hirshman."  (Franzen Dec., Ex. 4).  After referencing a *Variety* article that stated that "'you have partnered to develop' '[a]limited series based on the lives of Sandra Day O'Connor and Ruth Bader Ginsburg' and based on 'the Linda Hirshman biography 'Sisters in Law'", the Cease and Desist letter (Franzen Dec., Ex. 5) states:

> Be advised that on June 1, 2107[sic], Linda Hirshman entered into a written agreement (the "Agreement") with the Sisters in Law Producers under which she granted them "the *exclusive* dramatic rights, for live stage presentations, and other rights in the Work ..." as set forth in the Agreement (emphasis added).

The letter then: (1) recites the actual rights that Hirshman granted to the Producers in the Contract, quoting over almost a full page of text directly from the Contract; (2) specifically explains that Hirshman had previously granted the Producers motion picture and television rights, and (3) states that "[b]ased upon the foregoing, this is notice that you have no right to develop a limited series based on the lives of Sandra Day O'Connor and Ruth Bader Ginsburg based on the Linda Hirshman biography "Sisters in Law."[5] (Franzen Dec., Ex. 5).

The Complaint alleges that Franzen followed the Cease and Desist letter up with a May 7, 2018 email, in which he wrongfully "threatened to take Milano to court" based on his "false[]" assertion "that Milano had no right to go forward with a movie/television production based on the Book – despite the fact that Defendant only had Limited Stage Rights *to the play*."  (Compl. at ¶

---

[5] The letter cites to the following rights Hirshman granted to the Producer, among others: (1) "to make, produce, adapt, sell, lease, rent, reissue, perform and generally deal in and with and to copyright one or more motion picture adaptations or versions on film, disc, audio-visual, web-based or otherwise, based in whole or in part on the Play," and  (2) "to broadcast, transmit or reproduce the Play or any adaptation or version thereof... by means of television or any process analogous thereto whether now known or hereafter devised …"  (Franzen Dec., Ex. 5).

24) (emphasis in original).  Once again, at the core of this allegation is a dispute over what rights the Contract conveys to the Producers.

Next, the Complaint alleges that Franzen made claims in a June 4, 2018 letter to Milano's counsel concerning the rights that "Hirshman had agreed to grant [Franzen] and Weber," and that his assertions "were knowingly false and made to induce, *inter alia*, Hirshman and PBPP into not entering into and signing the book option/purchase agreement for the rights to motion picture, television, merchandising, and the allied and ancillary rights therein based on the Book, excluding the Limited Stage Rights." (Compl. at ¶¶ 25-27).

The actual June 4, 2018 letter Franzen sent reveals that Franzen again wrote a litigation protected settlement letter as a California attorney to address issues directly arising out of the Contract, this time with Milano's counsel.[6]  (a copy of the letter (partially redacted to exclude settlement communication) is attached as Franzen Dec., Ex. 6).  In this regard, Franzen states in the June 4, 2018 letter that he has not received a response to his May 2nd Cease and Desist letter, and then breaks his letter into "two parts, first, an analysis to show that [Hirshman] has already granted us (Weber and Franzen) the very same rights that she has now evidently granted Milano, and next, [to] propose a resolution of the matter." (Franzen Dec., Ex. 6).  In the analysis section – which extends over four single spaced pages – the June 4th letter details the rights Hirshman conferred to the Producers thereunder (including numerous direct quotations and citations to the Contract), and explains why Hirshman could not, if she adhered to her contractual obligation, have conveyed the same rights to Milano. (Franzen Dec., Ex. 6) (e.g., "[i]f Hirshman has in fact signed such an agreement with Milano, it would be in violation of this express covenant.").

---

[6] This letter is marked as "SUBJECT TO SETTLEMENT AND LITIGATION PRIVILEGES - WITHOUT PREJUDICE".  (Franzen Dec., Ex. 6).

The Complaint then references an October 2, 2018 incident in which Franzen allegedly made Nina Tassler, a member of PatMa, "uncomfortable" by asserting that she "'did not have the rights that [she] thought [she] had' – despite the fact that Defendant only had Limited Stage Rights *to the play*." (Compl. at ¶ 28) (emphasis in original).  Again, Hirshman's contention in grounded in Franzen's belief over, and dispute concerning, the rights the Contract conveys.

The Complaint alleges that Franzen's conduct as detailed above – i.e., his actions as an attorney and Producer, as well as Sisters Project LLC member, to assert his (and Sisters Project LLC's) rights as he understood them under the Contract – was wrongful and malicious, and caused PBPP and Hirshman to not enter into agreement with each other.  (Compl. at ¶ 30).

As alleged in the Complaint, Hirshman, PatMa, and AJM Productions, Inc. ("AJM") entered into a modified quitclaim book option purchase agreement, dated as of January 16, 2019.  (Compl. at ¶¶ 31-32).  Hirshman alleges that in that agreement, she "properly quitclaimed to PatMa and AJM the rights to motion picture, television, merchandising, and the allied and ancillary rights therein *in and to the Book,* and the agreement expressly provided that such rights excluded the Limited Stage Rights as expressly defined in the Limited Stage Agreement."  (Compl. at ¶ 32).  As such, the contention is expressly referencing Hirshman's understanding as to the rights she holds, and granted to the Producers, as set forth in the Contract.

The Complaint alleges that Franzen sent a June 17, 2020 email to Hirshman in which he "wrongfully threatened Hirshman's attorney with arbitration proceedings" after learning that Milano and her agents were soliciting screenwriters for a TV series based on the book, unless Hirshman could show the opposite within 14 days.  (Compl. at ¶ 34).  Hirshman alleges that Franzen's statements were "knowingly false, and made with malice or intent to harm", and taken "for the sole purpose of inflicting harm on Hirshman."  (Compl. at ¶¶ 38-39).

These curious allegations also expressly concern the Contract, which indisputably states that "[a]ny claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration." (Compl. at ¶ 14)).

Further, the actual June 17, 2020 email Franzen sent reveals that it specifically concerns both the Contract and Hirshman's impairment of the rights she conveyed to the Producers (a copy of the email is attached as Franzen Dec., Ex. 7).   In this regard, Franzen:

1.  reviewed his position as set detailed two years earlier that an agreement between Hirshman and Milano (and her agents) "to authorize a tv series based on the book "Sisters in Law"…would be a violation of her agreement with [Franzen and Weber].";

2.  explained that "acting in reliance on our rights under our agreement with Ms. Hirshman, we have produced two productions of the play, first in Phoenix in April 2019, and then in Los Angeles in October 2019, have secured cash investments in the project of $225,000, along with substantial contributions by the producing theaters, and have actively promoted and advanced the project not only on theatrical but other platforms as well;

3.  stated that Hirshman's recent actions with Milano and her agents threatened that effort and was violative of "the clear language of our agreement"; and

4.  stated that "unless within fourteen (14) days of this email we receive satisfactory evidence that no such series has been or is authorized, and that Ms. Hirshman is fully in compliance with the terms of our agreement with her, arbitration proceedings will be commenced against Ms. Hirshman pursuant to her agreement with us."

Finally, the Complaint alleges that "[o]n or about July 10, 2020, Defendant wrongfully commenced arbitration proceedings against Hirshman in New York City, falsely claiming that Hirshman had granted Sisters Projects LLC *"the right to exploit her [Book] in all media, including theater, television and film"* - in clear contravention of the fact that Defendant only, and solely, had been granted Limited Stage Rights. (Compl. at ¶ 40) (emphasis in original).  It further claims that Franzen was wrongfully practicing law in New York by so doing. (Compl. at ¶ 7).

11

The actual AAA Arbitration Demand that Franzen filed as the attorney and representative of Sisters Project LLC directly concerns the Contract – in fact, the Contract's arbitration clause was submitted as part of the Arbitration Demand (a copy of the complete Arbitration Demand is attached as Franzen Dec., Ex. 8; *see also* Franzen Dec., ¶ 20).  Substantively, the Arbitration Demand sought, *inter* alia, a "[d]eclaration of Claimant's rights and that Respondent's purported agreement with third parties is void," and describes the dispute as follows:

> Respondent signed an agreement by which she granted to Claimant the right to exploit her book "Sisters in Law" in all media, including theater, televsion and film. In contravention and breach of that agreement, Respondent has knowkingly and intentionally entered into an agreement with other parties for the televsion adapation of the book.[sic in original]

(Franzen Dec., Ex. 8).   Sisters Project LLC filed an Amended Arbitration Demand on September 8, 2020, which seeks, *inter alia*, the same relief (the Amended Arbitration Demand is attached as Franzen Dec., Ex. 9).

Notably, the AAA appointed an Arbitrator to adjudicate the dispute, and she issued an August 20, 2020 Order that denied Hirshman's Motions seeking: (1) a declaration that Franzen was wrongfully practicing law in New York by bringing the arbitration (i.e., the exact allegation in Paragraph 7 of the Complaint here); and (2) "an order terminating the Arbitration on the ground that Sisters Projects is not a party to the underlying agreement at issue and containing the arbitration provision."  (a copy of the Order is attached as Franzen Dec., Ex. 9; *see also* Franzen Dec., ¶¶ 22-23).

## **ARGUMENT**

### **I.     The Legal Standard for a Motion to Compel Arbitration**

The FAA "provides that an arbitration agreement shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

*Mobile Real Estate, LLC*, 2020 WL 2521451 at * 8 (citing  9 U.S.C. § 2).   The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 531 (2012).   Accordingly, "language excluding certain disputes from arbitration must be clear and unambiguous or unmistakably clear and . . . arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wire Service Guild, Local 222, Newspaper Guild, AFL–CIO v. United Press Int'l, Inc.*, 623 F.2d 257, 260 (2d Cir. 1980) .

The FAA, at 9 U.S.C. § 4, allows a party to petition the district court for an order compelling arbitration.[7]   This Court must evaluate such a motion to compel arbitration under a standard similar to that for a summary judgment motion. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).   "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). It is well-settled, however, that "the party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Citadel Servicing Corporation v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 284 (2019)(citations omitted). Indeed, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).   Therefore, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the

---

[7] 9 U.S.C. § 4 provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . ."

party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Citadel Servicing Corporation*, 431 F. Supp. 3d at 285. (citations omitted); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) (A "c]ourt must grant a motion to compel arbitration if the pleadings, discovery materials before the [c]ourt, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.").

## II.     The Court Should Compel Hirshman's Allegations to Arbitration So That An Arbitrator Can Determine Questions of Arbitrability

Hirshman's filing of her Complaint in this Court demonstrates that she – erroneously  – does not believe that the dispute set forth therein belongs in arbitration, which Franzen does.  *See LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (A party has "refused to arbitrate" within the meaning of 9 U.S.C. § 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.")

The parties' dispute over whether the Complaint's allegations should be heard before this Court or in arbitration effectively boils down to a "question of arbitrability, i.e., whether the parties have submitted this particular dispute to arbitration." *Mobile Real Estate, LLC*, 2020 WL 2521451 at *7 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588 (2002)).  In this regard, "[a] question of arbitrability is a term of art covering disputes about whether the parties are bound by a given arbitration clause, as well as disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* (citing *Pincaro v. Glassdoor, Inc.*, No. 16-CV-6870, 2017 WL 4046317, at *5 (S.D.N.Y. Sept. 12, 2017)).

Courts in the Second Circuit generally apply a two-part test to determine the question of arbitrability, whereby they consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration

agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citation omitted); *Mobile Real Estate, LLC*, 2020 WL 2521451 at * 7.

In connection with the first part of the test, this Court must determine the initial validity of the agreement to arbitrate. *See Henry Schein Inc. v. Archer & White Sales Inc.,* --- U.S. ----, 139 S. Ct. 524, 530 (2019) (stating that a court may not decide arbitrability issues if the agreement delegates arbitrability to an arbitrator *and* if a valid agreement exists). Hirshman cannot reasonably dispute the Contract's existence, or the language set forth therein. (*See* Franzen Dec., Ex. 1). Thus, "there is no issue of fact as to whether any agreement between [the parties] was ever concluded." *Mobile Real Estate, LLC*, 2020 WL 2521451 at * 8 (citations omitted).

In connection with the second part of the test, under the circumstances here, it is for the Arbitrator (and, respectfully, not this Court) to determine the issue of arbitrability. This is because "[t]he law generally treats arbitrability as an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (quoting *Howsam*, 537 U.S. at 83, 123 S.Ct. 588). "Clear and unmistakable evidence of an intent to arbitrate can be inferred from, *inter alia*, the following provisions in a contract: (i) broad language expressing an intention to arbitrate all aspects of all disputes; (ii) the incorporation by reference of arbitration rules that empower an arbitrator to decide issues of arbitrability; and (iii) the waiver of the right to seek remedies in court." *Citadel Servicing Corporation,* 431 F. Supp. 3d at 285 (citation omitted). Such provisions exist in the Contract here.

### A. The Contract Incorporates the AAA Rules

"[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as [such] clear and unmistakable evidence of the parties'

intent to delegate such issues to an arbitrator." *Contec Corp.*, 398 F.3d at 208 (citations omitted); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (same).

Only last year, the Supreme Court in *Henry Schein Inc.,* 139 S. Ct. at 529, made clear that there were no exceptions to the FAA's requirement that such arbitration agreements, including agreements as to determinations of arbitrability, be enforced:

> "We must interpret the [Federal Arbitration] Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."

The arbitration provision at issue here incorporates the AAA Rules into it – it states that "[a]ny claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration before one arbitrator, **to be held under the rules and regulations of the American Arbitration Association** in New York, New York". (Franzen Dec., Ex. 1 at ¶ 14) (emphasis supplied).

Rule 7 of the AAA's *Commercial Arbitration Rules and Mediation Procedures* ("AAA Rules") (July 1, 2016) (a copy of which is at Franzen Dec., Ex. 11) empowers the arbitrator to determine his or own jurisdiction, and questions of arbitrability.  It states:

R-7. Jurisdiction

(a)  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b)  The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c)  A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

It is well-settled that when parties explicitly incorporate the AAA Rules into their arbitration agreement, this serves as clear and unmistakable evidence of the intent to delegate questions of arbitrability to the Arbitrator.  *See, e.g. Contec Corp.*, 398 F.3d at 208; *Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) ("[B]y incorporating the [AAA Rules,] the parties agreed to have the arbitrators decide arbitrability."); *Mobile Real Estate, LLC*, 2020 WL 2521451 at *8;  *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 104 (S.D.N.Y. 2017); *see also Gwathmey Siegel Kaufman & Assocs. Paduano  v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 415 (E.D.N.Y. 2014) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] ... [R]ules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (alteration and quotation marks omitted) (collecting cases)).

 Simply put, Hirshman here, as "a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules may not disown [her] agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability." *Katsoris*, 237 F. Supp. 3d at 104–05 (emphasis in original) (quoting *Contec*, 398 F.3d at 211).

### B.  The Contract Contains Broad Language That Expresses An Intention To Arbitrate All Issues Related To The Contract

If this were not enough, the fact that the arbitration provision is intentionally broad – it states that "[a]ny claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration"  (Franzen Dec., Ex. 1 at ¶ 14)) – demonstrates an intent by the parties to have all matters, including arbitrability, decided by the arbitrators. *See, e.g.*, *Wells Fargo Advisors,*

*LLC v. Sappington*, 884 F.3d 392, 394, 396 (2d Cir. 2018) (clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise [, and] . . . giving up the right to sue Wells Fargo Advisors . . . in court concerning matters related to or arising from your employment demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability."); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (provision that "any and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration" and that "the parties are waiving their right to seek remedies in court" found to "evidence the parties' intent to arbitrate all issues, including arbitrability."); *Citadel Servicing Corporation,* 431 F.Supp.3d at 286 ("The Arbitration Provision's referral of 'all controversies' and 'any related matter' to arbitration generally reflects a broad grant of power to the arbitrators to assess arbitrability.") (citation omitted).

### C. The Contract's Arbitration Clause Demonstrates That The Signatories Intended For The Arbitrator To Determine The Question Of Arbitrability

Hirshman, on the one hand, and Franzen and Weber, on the other, agreed that "[a]ny claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of" the Contract would be submitted to AAA arbitration, and not to a court. (Franzen Dec., Ex. 1 at ¶ 14)). This fact "reinforce[s]" the "conclusion that the signatories intended for the arbitrator to determine this question of arbitrability." *Citadel Servicing Corporation,* 431 F. Supp. 3d at 288. ("Courts have routinely found that language in a contract waiving the signatories' right to sue each other in court provides at least some evidence of an intent to delegate arbitrability issues to the arbitrator."); *PaineWebber Inc.*, 81 F3d at 1199 (*supra*).

### III.    The Producers' Assignment Of The Contract To Sisters Project LLC Does Not Change The Fact That It Is For The Arbitrator To Determine Arbitrability

Franzen expects Hirshman to contend that she rightfully filed her action in this Court because Franzen (and Weber) assigned their rights under the Contract to Sisters Project LLC.  If Hirshman does make such an argument, it is wholly without merit – Franzen has the right to enforce the arbitration provision.

First, because that assignment does not change the fact that the arbitration clause is an "integral part" of Franzen's relationship with Hirshman, and can be "availed of by either party to the contract or by his legal representatives or assigns." *In Re Lowenthal,* 199 A.D. 39, 191 N.Y.S. 282, 285 (1st Dep't 1921).  Indeed, Franzen remains a "party aggrieved" under the FAA.  9 U.S.C. § 4.  Directly on point, in *Stations W., LLC v. Pinnacle Bank of Oregon*, CIV. 06-1419-KI, 2007 WL 1219952, at *3 (D. Or. Apr. 23, 2007), *aff'd in part sub nom.*, *Stations W., LLC v. Pinnacle Bank of OR*, 338 Fed Appx 658 (9th Cir 2009), the court looked to this Circuit's law to reject plaintiff's "argu[ment] that Pinnacle has waived the right to compel arbitration because it assigned the right to BP", holding that:

> Under the Federal Arbitration Act, "[a] party aggrieved by the alleged failure ... or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Since plaintiff alleges a claim against Pinnacle for breach of contract while at the same time disclaiming the arbitration provision in that very contract, Pinnacle qualifies as "[a] party aggrieved" and may compel arbitration. *See e. g. Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration Int'l., Inc.,* 198 F.3d 88 (2nd Cir.1999) (court implies that assignor could compel arbitration); *Vainqueur Corp. v. Lamborn & Co.,* 305 F.Supp. 1007 (D.N.Y.1969) ("When there is a specific written agreement to arbitrate any dispute that may arise out of an agreement, and one of the parties to that agreement fails to comply with its terms, the other party is entitled to an order compelling arbitration even if that party has irrevocably assigned its rights under the agreement."); *Lachmar v. Trunkline LNG Co.,* 753 F.2d 8 (2d Cir.1985) (accepts, without deciding, that assignor may participate in arbitration); *Tenneco Resins, Inc. v. Davy Int'l, A .G.,* 770 F.2d 416, 417, 422 (5th Cir.1985)(same).

Even if this were not the case, and Franzen were merely considered a non-signatory to the Contract in light of the assignment, the matter should still be compelled to arbitration. This is because "where a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator." *Mobile Real Estate, LLC*, 2020 WL 2521451 at *13 (quoting *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, *appeal dismissed*, No. 15-687 (2d Cir. Sept. 28, 2015)).

"In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." *Contec Corp.*, 398 F.3d at 209. "When such a sufficient relationship exists, a non-signatory may compel arbitration even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because [the non-signatory] cannot claim rights under the ... [a]greement." *Mobile Real Estate, LLC*, 2020 WL 2521451 at *13 (citation omitted).

Franzen is a managing member (and the corporate Secretary) of Sisters Project LLC and during the entire relevant time period was a producer to, and the attorney for, it (and earlier himself). (*See generally* Franzen Decl.). The alleged acts set forth in the Complaint, including the sending of emails and letters to Milano and her agents, and the threatening and ultimate filing of arbitration on Sisters Project LLC's behalf, all arise out of and concern Franzen's conduct in these respective roles and positions. As such, Franzen was a member and disclosed agent acting on behalf of Sisters Project LLC; and his interpretation of the Contract and application of its provisions in response to Hirshman's conduct was on Sisters Project LLC's behalf, as his correspondence and filings reflect. (Franzen Decl. Exs. 5, 6, 8 and 9); *See, e.g.*, *Time Warner City*

*Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552 (2d Dep't 2006) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.")  It is axiomatic in this Circuit that the same constitutes the existence of a sufficient relationship between the two. *See, e.g., Campaniello Imports Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299 (S.D.N.Y. 2010), *aff'd,* 408 Fed.Appx. 480 (2d Cir. 2011) (claims subject to employment agreement's arbitration provision, even though CEO was not party to agreement, where claims were based on CEO's status as employer's employee and agent); *Arshad v. Transportation Systems, Inc.*, 15 Civ. 2138, 2016 WL 1651845, at *6 (S.D.N.Y. Apr. 25, 2016) (granting motion to compel arbitration of corporate defendant with individual defendants, who are managers and owners of the corporate defendant); *cf. Holzer v. Mondadori*, No. 12 Civ. 5234 NRB, 2013 WL 1104269, at *9 (S.D.N.Y. Mar. 14, 2013) ("Mondadori does not have a sufficiently close relationship to LCB to compel arbitration of arbitrability as a non-signatory to the Purchase Agreements. Mondadori is not now, nor has she ever been, an officer, director, member, manager, employee, shareholder or agent of LCB.").

In addition to Franzen's direct relationship with Sisters Project LLC, Hirshman is a signatory to the Contract, which permits the assignment; and the dispute has arisen in part because the parties continued after the assignment occurred to conduct themselves as subject to that Contract, with their disagreement over their respective contractual rights thereunder continuing to fester.  *See e.g. Contec Corp.*, 398 F.3d at 209 ("sufficient relationship" between the parties where: (1) there was an undisputed relationship between one of the signatories and both corporate forms of the other signatory; (2) the signatory resisting arbitration had signed the original agreement; and

(3) the dispute arose because the parties continued to conduct themselves subject to the original agreement, even after a change in the corporate form of one of the signatories.).

The Court should thus grant the Motion to Compel, notwithstanding the assignment.

**IV.    If The Court Believes It Should Adjudicate Arbitrability, It Should Still Determine That The Parties' Dispute Is Subject to Arbitration**

Even if the Court concludes that it should reach the merits and determine the issue of arbitrability – and for the reasons set forth above, Franzen respectfully submits that it should not – the Court should determine, in light of the Complaint's allegations and the evidence presented, that arbitration is the appropriate forum for this matter to be considered in.

As detailed above, the arbitration provision is intentionally broad.  (Franzen Dec., Ex. 1 at ¶ 14).  *See, e.g., Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (explaining that an agreement requiring arbitration of disputes "arising out of or relating to" the agreement "is the paradigm of a broad clause").  In fact, the provision does not even delineate the parties that are within the boundaries of it.  *Id.*  Such a broad arbitration provision – both with respect to the parties and to the matters to be arbitrated – certainly includes the dispute here.  *JLM Indus., Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 172 (2d Cir. 2004) ("if the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them"; noting further that the scope of such a broad arbitration clause "extends to collateral matters.").

Hirshman is explicitly a party to the Contract and her Complaint's allegations arise out of it.  Indeed, at the heart of Hirshman's claim that Franzen acted tortiously is a dispute and disagreement over the rights in the book that Hirshman granted to the Producers and retained for herself in the Contract.  Franzen's conduct in sending cease and desist and settlement letters and emails to Milano (and her agents and related companies) and Hirshman and her agents clearly

touches upon the Contract, because it was done to: (1) protect – in their respective views – the rights the Contract grants to the Producers (and Sisters Project LLC), and (2) address Hirshman's believed impairment of the same.

In so doing, Franzen was a party to the Contract and thereafter assigned his rights, along with Weber, to Sisters Projects LLC, "for the purpose of exploiting producers' rights under the Contract." (Franzen Decl., ¶ 10). Hirshman agreed in the Contract that the Producers could assign their rights and was aware (or should have been) from Franzen's correspondence and the payment she received that an assignment had been made, and that Franzen was a member of, producer for and attorney to, Sisters Project LLC. *See, e.g.*, *Time Warner City Cable,* 27 A.D.3d at 552; *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 300 (S.D.N.Y. 1997) ("when a plaintiff who acquires rights under a contract as an agent, third-party beneficiary, or assignee subsequently bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed.").

By example only, the June 4, 2018 letter details the rights Hirshman conferred to the Producers under the Contract (including numerous direct quotations and citations to the Contract), and explains why Hirshman could not, if she adhered to her contractual obligation, have conveyed the same rights to Milano. (Franzen Dec., Ex. 6).

Similarly, Hirshman's claims also concern Franzen "wrongfully" threatening, and thereafter filing, an arbitration on Sister Projects LLC's behalf to protect its rights under the Contract, which she also avers Franzen did while improperly practicing law in the State of New York. (Compl. at ¶ 7). But the AAA Arbitration Demand that Franzen filed as the attorney and representative of Sisters Project LLC directly concerned and arose out of the Contract (Franzen Dec., Ex. 8). In fact, the Arbitration Demand sought, *inter* alia, a "[d]eclaration of Claimant's

rights and that Respondent's purported agreement with third parties is void," and described the dispute as concerning the rights Hirshman granted in Contract, and her knowing and intentional impairment of the same. (Franzen Dec., Ex. 8).

Further, allegations in this action have already been ruled upon by the Arbitrator.  This includes an Arbitrator Order denying Hirshman's duals Motions seeking: (1) a declaration that Franzen was wrongfully practicing law in New York by bringing the arbitration (i.e., the exact allegation in Paragraph 7 the Complaint here); and (2) "an order terminating the Arbitration on the ground that Sisters Projects is not a party to the underlying agreement at issue and containing the arbitration provision."  (Franzen Dec., Ex. 10).

For these reasons, it is indisputable that that the allegations in Hirshman's Complaint concern a "claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of [the Contract], or the breach thereof"; and the Court therefore should issue an Order that they "be submitted to arbitration."

## V.     The Court Should Stay The Matter

The Second Circuit has recognized that compelling arbitration and staying the matter is the appropriate method to require arbitration, even for claims that are wholly arbitrable such that  there is nothing to "stay" pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("while we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); *see also* 9 U.S.C. § 3.

Similarly, the Court properly may exercise its inherent power to stay the action pending: (1) the arbitrator's decision on arbitrability, or (2) the arbitration itself (should it decide that there is a non-arbitrable claims).  As to the later point, a stay is appropriate when the non-arbitrable

claims "involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants." *Katsoris,* 237 F. Supp. 3d at 111. As described above, Hirshman's claims overlap factually and legally with the claims in the pending arbitration, and an arbitral judgment likely would have preclusive effect over any issue not arbitrated. Thus, even assuming that Hirshman asserted a non-arbitrable claim, or that the Contract's arbitration provision may not be enforced by or against Franzen, this action still should be stayed. *Id.*.

## CONCLUSION

For these reasons, Franzen respectfully requests that the Court issue an Order that grants Franzen's Motion to Compel arbitration and to stay this matter pursuant to Sections 3 and 4 of the FAA; and grant Franzen whatever other relief is just and appropriate.

Dated: New York, New York
October 9, 2020

BAILEY DUQUETTE P.C.

By: _____

David I. Greenberger, Esq.
Shashi K. Dholandas, Esq.
104 Charlton Street, Suite 1W
New York, NY 10014
O: (212) 658-1946
E: david@baileyduquette.com
E: shashi@baileyduquette.com

*Attorneys for Defendant Don Franzen*