# EXHIBIT 6

Law Offices of

# Funsten & Franzen

An Association of Law Corporations

9595 Wilshire Boulevard, Suite 305
Beverly Hills, California 90212-2500
Telephone: (310) 785-1710
Facsimile: (310) 785-1720
Website: Http://www.lawff.com
Email Address:dfranzen@lawff.com

June 4, 2018

SUBJECT TO SETTLEMENT AND LITIGATION PRIVILEGES - WITHOUT PREJUDICE

Bill Skrzyniarz
Skrzyniarz & Mallean
1875 Century Park East
Suite 930
Los Angeles, CA  90067
Telephone:     310-786-8876
Facsimile:       310-786-8878
E-mail:            billsky@skylaw.net

Re:  Sisters in Law

Dear Bill:

In our last conversation you informed me that your client, Alyssa Milano, was unwilling to enter into any discussions to the end of resolving the issues relating to the conflict between the rights granted me and my co-producer, Elizabeth Weber, and those purportedly granted Ms. Milano, as reported in this Variety article:
(https://www.google.com/amp/variety.com/2018/tv/news/sandra-day-oconnor-ruth-bader-ginsburg-series-alyssa-milano-1202793549/amp/).
You also said that in view of your client's refusal to open such a discussion, you would refer this to litigation counsel to reply to the Cease and Desist letter I sent on May 2, 2018.  I have not heard from you or anyone else since.

In view of this silence, I submit this letter, which is in two parts, first, an analysis to show that Linda Hirshman ("Hirshman") has already granted us (Weber and Franzen) the very same rights she has now evidently granted Milano, and next, propose a resolution of the matter.

ANALYSIS

The agreement Hirshman signed granted Weber and Franzen (the "Producers") exclusive rights to exploit the book "Sisters in Law" by way of a play or through other media, including television.  The agreement with Milano, et al., is in violation of the warranties and covenants given by Hirshman to us.  To demonstrate this, I call the following provisions of the agreement Hirshman signed:

Hirshman granted the Producers (Weber and Franzen) "exclusive dramatic rights" and "other rights in the Work" as set forth in the agreement.  The "Work" is defined as the book itself; the "Play" as the dramatic adaptation of the Work.

"Linda agrees to and do hereby gives and grants to Producers the exclusive dramatic rights, for live stage presentations, and other rights in the Work as hereinafter described …" Par. 1.

## Funsten & Franzen

SUBJECT TO SETTLEMENT AND LITIGATION PRIVILEGES - WITHOUT PREJUDICE
June 4, 2018
Page 2 of 4

The "exclusive rights" granted the Producers are enumerated in the agreement. They include "stage presentation rights" and "incidental and allied rights" "in and to the Work" [not the Play].

"Linda sells, grants, conveys and assigns to Producers and their successors, licensees and assigns exclusively and forever all stage presentation rights, publication rights for advertisement, publicity and exploitation purposes, and certain incidental and allied rights hereinafter set forth, throughout the world, in and to the Work. Included among the rights granted to Producers (without in any way limiting the grant of rights made but subject to the conditions of Clauses 5 and 6 below) are the following sole and exclusive rights throughout the world …" Par. 1 (c).

The additional rights granted "in and to the Work" include, the right:

"to make, produce, adapt, sell, lease, rent, reissue, perform and generally deal in and with and to copyright one or more motion picture adaptations or versions of the Play on film, disc, audio-visual, web-based or otherwise, based in whole or in part on the Play …" Par. 1(c)(ii).

The video adaptations may be based "in whole or in part on the Play." This means the right to adapt for motion picture is not limited to the Play itself.

Television rights are also granted:

"to broadcast, transmit or reproduce the Play or any adaptation or version thereof by means of television or any process analogous thereto whether now known or hereafter devised …" Par. 1(c)(iii).

Hence, the television adaptation need not be based on the Play itself, it may be based on any adaptation or version of the Play. Since the Play can be based on any element or aspect of the Work, this means (by syllogism) the television adaptation can be based on any element or aspect of the Work. From this it follows that, during the term of this agreement, LH was not free to grant television rights to any other persons.

The same language appears with respect to internet streaming:

"to broadcast or transmit the Play or any adaptation or version of the Play by radio or over the internet or any other means of transmitting sound now know or hereinafter invented; …" Par. 1(c)(v).

The rights granted are cumulative:

"All rights, licenses, privileges and property herein granted to Producers shall be cumulative and are limited only as specifically herein set forth; and Producers may exercise or use any or all such rights, licenses, privileges or property simultaneously with or in connection with or separately and apart from the exercise of any other such rights, licenses, privileges and property." Par. 1(d).

The only rights specifically reserved by Hirshman are print publication rights:

"Except as specifically granted herein, Linda reserves all other rights in the Book, including specifically print publication rights." Par. 2.

## Funsten & Franzen

SUBJECT TO SETTLEMENT AND LITIGATION PRIVILEGES - WITHOUT PREJUDICE
June 4, 2018
Page 3 of 4

The agreement repeats again that the Producer's rights are exclusive:

"Producers shall enjoy solely and exclusively, all of the rights, licenses, privileges and property granted hereunder throughout the world, in perpetuity, as long as any rights in the Work are recognized in law and equity, …" Par. 6.

Hirshman warranted that she has not assigned the rights to anyone else:

"Linda, except as provided herein, has not assigned or licensed to any other person, firm or corporation, or in any manner encumbered or hypothecated, any rights herein granted to Producers with respect to the Work or any part of the Work, or committed any act by which any of such rights could or might be diminished or impaired, and there are no rights, licenses and/or grants of any kind in favor of any person, firm, or corporation and no claims, litigation or other proceedings pending or threatened, which could in any way impair, limit, diminish or infringe upon the rights herein granted to Producers." Par. 7(d).

And that she will not assign them to anyone else:

"Linda will not at any time hereafter execute any other agreement in conflict herewith or in any way attempt to sell, dispose of, encumber or hypothecate any of the rights herein granted to Producers with respect to the Work or any part of the Work, or do or knowingly permit to be done any act or thing by which any of such rights may be impaired." Par. 7(e).

If Hirshman has in fact signed a deal with Milano, such agreement would be in violation of this express covenant.

Hirshman also agreed to indemnify the Producers for any expenses arising from her breach of those warranties:

"Linda agree to indemnify and hold harmless Producers or any person claiming by, through or under her from and against any and all costs, expenses, judgments or awards (including reasonable counsel fees) which may be incurred or suffered by them arising out of or by reason of any breach or non-performance of any warranty, representation, covenant or undertaking of Linda." Par. 8.

If Hirshman violates any of the warranties, the time in which to exercise rights under the agreement are tolled:

"Linda hereby agree that if there is any claim and/or actual litigation involving any breach or alleged breach of any of the above representations and warranties of Linda, the option period granted hereunder (that is, the period set out in Clause 5 during which the Play must be first presented on the live stage before a paying audience) shall automatically be extended until no such claim and/or litigation is outstanding." Par. 7(f).

From the above, it is to be concluded: 1/ Hirshman gave Weber and Franzen the exclusive rights to adapt the book into a play, and 2/ she also gave them the exclusive right to produce tv or movies based "in whole or in part" on the Play, such that it follows  3/ the tv or movie can be based on elements of the book other than the play itself, from  which it follows 4/ Hirshman cannot grant tv or movie rights to anyone else and her purported agreement with Milano is invalid and void.

# Funsten & Franzen

SUBJECT TO SETTLEMENT AND LITIGATION PRIVILEGES - WITHOUT PREJUDICE
June 4, 2018
Page 4 of 4

    Additionally, the agreement with Milano et al. is a violation of her covenant not to "sell, dispose of, encumber or hypothecate any of the rights herein granted to Producers with respect to the Work or any part of the Work …" Par. 7(e).

    Further, by creating the claim of Milano, Hirshman has also triggered the provisions cited above, automatically extending the option period enjoyed by the producers of the Play, and until such time "no such claim and/or litigation is outstanding." Par. 7(f).

    Apart from the language on the document itself, extensive email correspondence exists between Weber and Hirshman and myself corroborating that Hirshman well understood the plan and intention to first produce a play based on the book, then move to a television or film adaptation of the book.



Very truly yours,

FUNSTEN & FRANZEN

Don Erik Franzen

DEF/
cc: Elizabeth Weber