# EXHIBIT 9

**AMERICAN ARBITRATION ASSOCIATION®** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
AMENDED **DEMAND FOR ARBITRATION**

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | | |
|---|---|---|
| Name of Respondent: Linda Hirshman | | |
| Address: 6503 N. 27th Street | | |
| City: Phoenix | State: Arizona ▼ | Zip Code: 85016 |
| Phone No.: unknown | Fax No.: unkown | |
| Email Address: linda.hirshman@gmail.com | | |
| Name of Representative (if known): Gabriel Levinson | | |
| Name of Firm (if applicable): Polsinelli | | |
| Representative's Address: 600 Third Ave. | | |
| City: New York | State: New York ▼ | Zip Code: 10016 |
| Phone No.: 212.413.2853 | Fax No.: 212.202.7582 | |
| Email Address: glevinson@polsinelli.com | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:
See Amended Demand attached.

Dollar Amount of Claim: $ Subject to discovery and subject to proof, but estimated at $295,000

Other Relief Sought: ☑ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs  ☐ Punitive/Exemplary
☑ Other: See Amended Demand attached

Amount enclosed: $ n/a

In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☐ Standard Fee Schedule

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:
n/a as arbitrator has been appointed.

Hearing locale: New York
(check one) ☐ Requested by Claimant  ☑ Locale provision included in the contract

Estimated time needed for hearings overall: Per scheduling order      hours  or      days

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
AMENDED **DEMAND FOR ARBITRATION**

| Type of Business: | |
|---|---|
| Claimant: Entertainment Services | Respondent: Author |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? No | |
| Signature (may be signed by a representative): | Date: September 8, 2020 |
| Name of Claimant: Sisters Projects LLC | |
| Address (to be used in connection with this case): 9595 Wilshire Blvd. Ste. 305 | |

| City: Beverly Hills | State: California | Zip Code: 90212 |
|---|---|---|
| Phone No.: 310 785 1710 | Fax No.: 310 785 1720 | |

| Email Address: dfranzen@lawff.com |
|---|
| Name of Representative: Don Franzen |
| Name of Firm (if applicable): Funsten & Franzen |
| Representative's Address: 9595 Wilshire Blvd. Ste. 305 |

| City: Beverly Hills | State: California | Zip Code: 90212 |
|---|---|---|
| Phone No.: 310 785 1710 | Fax No.: 310 785 1720 | |

| Email Address: dfranzen@lawff.com |
|---|

To begin proceedings, **please file online at www.adr.org/fileonline.** You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee.

<u>**AMENDED ARBITRATION DEMAND**</u>

*Sisters Projects, LLC v. Linda Hirshman* - Case 01-20-0009-8574

On or about June 1, 2017, Linda Hirshman (Respondent ) signed an agreement  (the Agreement) with Elizabeth Weber and Don Franzen by which she granted certain exclusive rights to them in and to her book, "Sisters in Law" (the Book).  A true and correct copy of the Agreement is attached to this Arbitration Demand.

As expressly allowed for by Paragraph 26 of the Agreement,  Weber and Franzen assigned their rights under the Agreement to Claimant Sisters Projects LLC, and Claimant agreed to be bound the terms of that Agreement.

I.    **Claimant's Arbitration Claims Related To The Prohibition On Respondent Granting <u>Third Parties Rights That Infringe On Claimant's Rights Under The Agreement</u>**

A controversy has arisen between the parties to the Agreement, wherein Claimant asserts, and Respondent denies, that during the term of the Agreement, she is prohibited from granting rights that in any way infringe on Claimant's rights under the Agreement, and that granting third parties the right to make a television series based on the Book infringes on Claimant's rights under the Agreement.

More specifically, in or around early 2019 – i.e., subsequent to signing the Agreement – Respondent attempted to transfer rights to certain third parties to create a television series based on the Book.

By granting such rights to third parties, Respondent has breached the Agreement, and more specifically her warranty set forth in Paragraph 7(d) of the Agreement, which states that Respondent  "will not at any time hereafter execute any other agreement in conflict herewith or in any way attempt to sell, dispose of, encumber or hypothecate any of the rights herein granted."

As a result of Respondent's breach, Respondent is liable to Claimant for breach of the Agreement.  In connection with the same, Paragraph 8 of the Agreement states that "Linda [Respondent] agrees to indemnify and hold harmless Producers or any person claiming by, through or under her from and against any and all costs, expenses, judgments or awards (including reasonable counsel fees) which may be incurred or suffered by them arising out of or by reason of any breach or non-performance of any warranty, representation, covenant or undertaking of Linda."

Paragraph 14 of the Agreement likewise provides for recovery of attorneys' fees, costs and disbursements to the prevailing party in any claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of the Agreement.

Claimant therefore respectfully requests, in connection with these claims, that the Arbitrator issue an Award that contains the following relief:

1

1) A declaration of the rights of the parties under the Agreement;
2) A finding that Respondent has breached the Agreement by granting third parties the right to create a television series based on the Book, including but not limited to  her warranties and representations to Claimant;
3) A finding that Respondent is liable to Claimant for costs, expenses, judgments or awards (including reasonable counsel fees) incurred or suffered by Claimant arising out of or by reason of any breach and/or non-performance of the Agreement, and any warranty or other relevant provision set forth therein.
4) For such other relief as the Arbitrator may determine proper in the circumstances.

II.     **Claimant's Arbitration Claims Related To Respondent's**
        **Breach Of The Arbitration Clause Set Forth In The Agreement**

Paragraph 14 of the Agreement requires binding arbitration of "any claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof" before the American Arbitration Association.

In violation of the express terms of Paragraph 14 of the Agreement, on or about August 12, 2020, Respondent filed a lawsuit against Don Franzen in the Southern District of New York (*Hirshman v. Franzen*, Case No. 20-cv-06322) (the "SDNY case"), wherein Respondent alleges Franzen committed various wrongful acts related to the Agreement and his representation of, and membership in, the Claimant in this very arbitration.[1]

Franzen, of course, is an original signatory to the Agreement, and is the attorney, agent and member of Claimant, as assignee and holder of the rights under the Agreement.

All of the acts alleged against Franzen in the SDNY case are claims, disputes, misunderstandings or controversies or charges of unfair dealing arising under, in connection with, or out of the Agreement, or the breach thereof, and are therefore subject to binding arbitration under the provisions of the Agreement. *See* Paragraph 14.

Respondent breached the Agreement by filing the SDNY case, and Respondent is liable for all costs and expenses (including reasonable counsel fees) which Claimant has incurred, or may incur or suffer by reason of Respondent improperly filing and prosecuting the SDNY case in lieu of arbitration.  This specifically includes all of the attorney's fees and costs that are incurred in

---

[1] Franzen is filing a Motion to Compel the SDNY case to arbitration, and expressly reserves all of his rights and defenses in connection with the SDNY Complaint, including but not limited to, the denial of its material allegations and the right to aver that it fails to assert a cause of action upon which relief can be granted.

bringing a Motion to Compel the matter to arbitration at the American Arbitration Association ("AAA").

Claimant therefore respectfully requests, in connection with these claims, that the Arbitrator's Award also contains the following relief:

1) A finding that Respondent breached the Agreement by filing and prosecuting the SDNY case against Franzen instead of asserting her claims in an arbitration;
2) A finding that Respondent is liable to Claimant for costs and expenses, including reasonable counsel fees, incurred or suffered by Claimant arising out of or by reason of Respondent's breach of Paragraph 14, in an amount to be shown by evidence, or as proven.
3) For such other relief as the Arbitrator may determine proper in the circumstances.

CONTRACT

AGREEMENT made as of this 1st day of June, 2017, by and between Elizabeth Weber and Don Franzen (together "Producers") address 9595 Wilshire Blvd. Ste. 305 Beverly Hills CA 90212 and Linda Hirshman ( "Linda") address 693 N. 27th St New York, NY Wheeling, AZ 85016.

WHEREAS, Linda is the author of the book Producers In Law (the "Book" or the "Work") and owns the copyright therein; and

WHEREAS, Producers intend to produce a stage play (the "Play") based on the Book and undertake to secure a commission for a playwright to write the Play (the "Playwright"); and

WHEREAS, Producers, relying upon Linda's representations and warranties hereunder, desires to acquire the rights hereinafter granted in and to the Work;

NOW, THEREFORE, the parties agree as follows:

1. GRANT OF RIGHTS: Linda agrees to and do hereby gives and grants to Producers the exclusive dramatic rights, for live stage presentations, and other rights in the Work as hereinafter described.

(a) Producers are acquiring the rights to adapt the Play, but anything herein to the contrary notwithstanding, the Producers agree that the adaptation will be done with care to ensure that the Play is consistent with the content, tenor and spirit of the Book. Further, Linda shall have meaningful consultation rights with the Playwright as to the content, tenor and spirit of the Play. Linda shall have a right of approval, not to be withheld or delayed unreasonably, of the Playwright; provided, however, Jonathan Shapiro is hereby approved by Linda.

(b) Linda gives and grants to Producers the sole and exclusive right to use, adapt, translate, subtract from, add to and/or delete from the Work and to rearrange and/or transpose the Work and the sequence of its elements and the characters and descriptions of the characters contained in the Work, to use a portion or portions of the Work in conjunction with any other literary, dramatic or other material of any kind and to change the Work and the titles thereof in the production of a stage presentation (the "Play").

(c) Subject to the limitations specifically set forth in this Agreement, Linda sells, grants, conveys and assigns to Producers and their successors, licensees and assigns exclusively and forever all stage presentation rights, publication rights for advertisement, publicity and/or exploitation purposes, and certain incidental and allied rights hereinafter set forth, throughout the world, in and to the Work. Included among the rights granted to Producers (without in any way limiting the grant of rights made but subject to the conditions of Clauses 5 and 6 below) are the following sole and exclusive rights throughout the world:

  (i)     to present the Play on the speaking stage in the immediate presence of a living audience in an Off-Off-Broadway, Off-Broadway, first-class, second-class, non-commercial, regional, Broadway and other productions throughout the World;

  (ii)    to make, produce, adapt, sell, lease, rent, reissue, perform and generally deal in and with and to copyright one or more motion picture adaptations or versions of the Play on film, disc, audio-visual, web-based or otherwise, based in whole or in part on the Play, of every size, gauge, color or type, whether produced for exhibition on television, theatrically, non-

1

theatrically, or otherwise, including dramatic and musical motion pictures and remakes of and sequels to any motion pictures produced hereunder, and for such purposes to record and reproduce and license others to reproduce, in synchronization with such motion pictures, spoken words taken from or based upon the text or theme of the Play and any and all kinds of music, musical accompaniments and/or lyrics to be performed or sung by the performers in any such motion picture and any and all other kinds of sound and sound effects;

(iii)    to broadcast, transmit or reproduce the Play or any adaptation or version thereof by means of television or any process analogous thereto whether now known or hereafter devised (including commercially sponsored, cable, sustaining and subscription or pay-as-you-see television), through the use of motion pictures produced or film or by means of magnetic tape or wire or any other device now known or hereafter devised and including television productions presented in series or serial form, and generally to exercise for television purposes all the rights granted to Producers for motion picture purposes;

(iv)    to record and reproduce and license others to record and reproduce language, speech, dialogue, music and any other sound (including foreign language in synchronization with the production, exhibition or distribution of motion picture adaptations or versions based in whole or in part upon the Play as described above, whether such recording be on the film itself, on tape, on separate discs, or otherwise, by means of any devices now known or to be known, and which are now used, or hereafter may be used, invented or discovered, in connection with the production, exhibition or distribution of such motion pictures (all films, tapes or discs or other material on which sounds are now or hereafter may be recorded for use in connection with and/or in synchronization with such motion pictures are hereinafter referred to as "sound track");

(v)     to distribute, sell, lease, exhibit, syndicate, license for exhibition and in any other manner or by any and all means exploit and dispose of throughout the world for public and/or private performances such motion picture versions and sound tracks;

(vi)    to broadcast or transmit the Play or any adaptation or version of the Play by radio or over the internet or any other means of transmitting sound now know or hereinafter invented;

(vii)   to secure copyright registration (or, in the countries where no copyright law exists, equivalent protection) of the Play, motion picture versions, sound tracks, broadcasts or other versions in all countries of the world under the then existing laws of such countries in the name of Producers or any other person, firm or corporation;

(viii)  to exercise fully, analogously to the dramatic and musical rights listed above, any other dramatic or musical right or rights in the Work in media hereafter devised or developed; and

(d) All rights, licenses, privileges and property herein granted to Producers shall be cumulative and are limited only as specifically herein set forth; and Producers may exercise or use any or all such rights, licenses, privileges or property simultaneously with or in connection with or separately and apart from the exercise of any other such rights, licenses, privileges and property.

(e) Notwithstanding anything else set forth herein, at all times prior to the expiration of Producers' rights hereunder, Producers shall have the right to produce readings, backers auditions, workshops and showcase presentation(s) of the Play, with no additional consideration to the Linda provided that no ticket revenue is collected.  Furthermore, during such period Producers shall have the right to present,

2

enhance and/or license the Play as a not-for-profit limited run production(s), to include developmental (including, without limitation, readings, backers auditions, workshops and showcase presentation(s) of the Play) and League of Resident Theater (LORT) productions as defined by the APC (any such developmental production shall be referred to herein as a "Developmental Production").

2. RESERVATION OF RIGHTS: Except as specifically granted herein, Linda reserves all other rights in the Book, including specifically print publication rights. Linda agrees that the rights reserved by Linda hereunder, shall not relate to or include any adaptation, revision, change or addition in or to the Work made by or with the authority of Producers or any new or additional characters or other material contained in the Play or any motion picture, broadcast or other version or adaptation of the Play made or produced by Producers.

3. CHANGE IN PROPERTY: Linda hereby waives the benefits of law known as "droit moral" or any similar law in any country of the world and agree not to institute, support, maintain or permit any action or lawsuit on the ground that the Play or any motion picture, broadcast, or other version of the Play produced or exhibited by Producers in any way constitutes an infringement of Linda's droit moral or is in any way a defamation or mutilation of the Work or any part thereof or contains unauthorized variations, alterations, modifications, changes or translations.

4. PURCHASE PRICE:

(a) In consideration of Producers undertaking to secure a commission for a playwright to write the Play, Producers are hereby granted an option to produce the Play to open on or before June 1, 2019. If Producers pay to Linda a non-returnable advance in the amount of $1,000 on or before June 1, 2019, the option shall be extended to open the play on or before June 1, 2020 and if Producers pay to Linda an additional $5,000 on or before June 1, 2021, the option shall be extended to open the play on or before June 1, 2022.

(b) Linda shall also be entitled to receive as royalty payments **twenty-five (25%) per cent** of total author royalties (including the percentage payable to Linda in computing such total but excluding developmental readings or workshops) presenting the Play throughout the world that is authorized or licensed hereunder.

(c) If all royalty participants agree to participate in a Royalty Pool Formula, Linda agrees to share in the royalty pool in the same proportion that 25% bears to the total percentage payable to authors (including the percentage payable to Linda in computing such total).

(d) Anything to the contrary herein notwithstanding if Authors and all other royalty participants, including Producers with respect to Producer's fee, agree to a royalty waiver in accordance with the terms of a Royalty Adjustment, then Linda agrees that she will accept a waiver of royalties that is in the same proportion that Authors waive in accordance with the terms of the formula. If there is a dispute as to what constitutes a reduction in the "same proportion," the decision of the Accountant for Production Company shall be binding upon the parties.

(e) In addition, from all proceeds and other things of value received by the Producers from the sale, lease or license or other disposition of the subsidiary rights in the Play, Linda shall be entitled to receive 25% of net receipts payable to authors (after deduction of third party payments required by such sale, license or disposition) from the proceeds of any such sale, license or disposition.  Subsidiary rights shall

3

include but not be limited to films, television, first and second class productions and tours, foreign language performances, condensed and tabloid versions, commercial uses, audio-visual recordings, stock and amateur performances. In the event either Linda or Playwright provide additional services in relation to the Play, or any ancillary exploitation of the Play, it is understood they will be separately compensated for such services and such additional compensation shall not act to reduce what would otherwise be the total authors' share. Producers agree to act in good faith to carry out the foregoing

5. REVERSION OF RIGHTS: The rights granted shall cease and terminate and shall automatically revert to Linda, without any action of any kind by Producers, unless there is a First-Class Production of the Play which opens during the option period as extended and there is no merger of rights pursuant to Clause 6 of this agreement.

6. SCOPE OF RIGHTS; MERGER; REVISION OF RIGHTS; BOOKS AND RECORDS: (a) Subject to Subclauses (b) and (c) of this Clause 6, Producers shall enjoy solely and exclusively, all of the rights, licenses, privileges and property granted hereunder throughout the world, in perpetuity, as long as any rights in the Work are recognized in law and equity, except insofar as such period of perpetuity may be shortened because of the due expiration of any now existing or future copyright by Linda of the Work and/or any adaptations thereof, in which case Producers shall enjoy their sole and exclusive rights, licenses, privileges and property hereunder to the fullest extent permissible under and for the full duration of such copyright or copyrights, whether common law or statutory, and any and all renewals and/or extensions thereof, and shall thereafter enjoy all such rights, licenses, privileges and property non-exclusively in perpetuity throughout the world. All the rights, licenses, privileges and property herein granted to Producers are irrevocable and not subject to rescission, restraint or injunction under any circumstances, except as specifically otherwise set forth in this Agreement.

(b) Upon the presentation of the Play by Producers or her assigns for the number of performances that would cause the rights to vest in Producer, in accordance with the terms of the Dramatists Guild, Inc., Approved Production Contract (the "APC"), the Play and the Work shall be deemed merged forever and in perpetuity and all grand performing rights (that is, dramatic rights) may be dealt with throughout the world solely by Producers or their assigns. Linda's rights in the copyright of the Work or any part shall continue to be vested in Linda, subject, however, in all respects to the terms and conditions of this Agreement.

(c) While the rights granted to Producers under this Agreement are in effect, Producers shall keep and maintain, or cause to be kept and maintained, full and correct books and records relating to the presentation of the Play and all transactions in which Linda may have an interest in hereunder. Linda or Linda's representative shall have the right to examine such books and records of Producers at reasonable times during business hours upon giving two (2) weeks' notice provided, however, that such examination may not be conducted more than twice annually.

7. LINDAS' REPRESENTATIONS AND WARRANTIES: Linda represents and warrants that: (a) Upon information and belief and to the best of their knowledge, Linda is the sole and exclusive proprietor of the Work throughout the world and has, without limitation, all rights in and to the Work granted to Producers hereunder, including all rights to any work on which the Work is based, and Linda has full right, power and authority to enter into this Agreement and to grant to Producers all of the rights enumerated herein. No adverse claim of any kind has been made against Linda or is known to Linda with respect to the Work or the rights therein granted to Producers.

4

(b) The Work is not in the public domain in the United States of America and enjoys copyright protection in such jurisdiction.

(c) The full use of the Work or any part thereof as herein granted will not in any way violate or infringe upon any copyright (common law or statutory) belonging to any person, firm, or corporation, or otherwise violate or infringe upon any other right or rights whatsoever of any person, firm or corporation.

(d) Linda, except as provided herein, has not assigned or licensed to any other person, firm or corporation, or in any manner encumbered or hypothecated, any rights herein granted to Producers with respect to the Work or any part of the Work, or committed any act by which any of such rights could or might be diminished or impaired, and there are no rights, licenses and/or grants of any kind in favor of any person, firm, or corporation and no claims, litigation or other proceedings pending or threatened, which could in any way impair, limit, diminish or infringe upon the rights herein granted to Producers.

(e) Linda will not at any time hereafter execute any other agreement in conflict herewith or in any way attempt to sell, dispose of, encumber or hypothecate any of the rights herein granted to Producers with respect to the Work or any part of the Work, or do or knowingly permit to be done any act or thing by which any of such rights may be impaired.

(f) Without limiting any other rights Producers may have in the Work, Linda hereby agree that if there is any claim and/or actual litigation involving any breach or alleged breach of any of the above representations and warranties of Linda, the option period granted hereunder (that is, the period set out in Clause 5 during which the Play must be first presented on the live stage before a paying audience) shall automatically be extended until no such claim and/or litigation is outstanding.

8. INDEMNITIES: Linda agree to indemnify and hold harmless Producers or any person claiming by, through or under her from and against any and all costs, expenses, judgments or awards (including reasonable counsel fees) which may be incurred or suffered by them arising out of or by reason of any breach or non-performance of any warranty, representation, covenant or undertaking of Linda.

9. FURTHER INSTRUMENTS: Linda will duly execute, acknowledge and deliver to Producers, or cause to be executed, acknowledged and delivered to Producers, in form approved by Producers, any and all further assignments or instruments that Producers may deem reasonably necessary, expedient or proper to carry out and effectuate the purposes and intent of this Agreement, provided such documents are prepared at the Producers' expense.

10. LINDAS' APPROVAL: Producers shall have no obligation to seek or obtain Linda's' approval of the engagement of any cast member, director or any other creative or business personnel or element of any production of the Play, but Producers shall from time to time consult with Linda and seek Linda's' advice and counsel on such matters.

11. AGENCY: All sums of money due Linda shall be paid to such her in such manner as she may from time to time designate in writing to Producers.

5

12. NOTICES: All notices required to be given hereunder shall be in writing and sent by first class mail or by email to the addresses above, except as may, from time to time, be otherwise directed in writing by the respective parties.

13. BILLING CREDIT: Linda will be given appropriate billing credit wherever the name of the Playwright appears on programs, billboards, houseboards and paid advertising, exclusive of ABC ads and teasers in type at least 50% of the size, prominence and boldness of the type used for the names of the Playwright, in the following form:

Based on the book "Sisters In Law" by Linda Hirshman

14. ARBITRATION: Any claim, dispute, misunderstanding or controversy or charge of unfair dealing arising under, in connection with, or out of this Agreement, or the breach thereof, shall be submitted to arbitration before one arbitrator, to be held under the rules and regulations of the American Arbitration Association in New York, New York. Judgment upon the award rendered may be entered in the highest court of any forum, State or Federal, having jurisdiction. The arbitrator is directed to award to the prevailing party reasonable attorneys' fees, costs and disbursements, including reimbursement for the cost of witnesses, travel and subsistence during the arbitration hearings. Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered by the appropriate court of the forum having jurisdiction.

15. NEW YORK LAW GOVERNS: This Agreement, regardless of its place of execution, shall be construed, interpreted and enforced in accordance with the laws of the State of New York applicable to agreements executed, delivered and to be performed within such State.

16. PRODUCERS'S RIGHTS TO ASSIGN: Producers shall have the right freely to assign this Agreement, provided the assignee agrees to be bound by this Agreement.

17. CHANGES IN AGREEMENT: This Agreement constitutes the entire understanding between the parties and may not be modified except by a written instrument duly executed by the parties or the Producers' assignees or their authorized representatives.

18. NO PARTNERSHIP: Nothing herein contained shall constitute a partnership or joint venture between the parties. No party shall act in any manner contrary to the terms of this clause, and no party shall become liable by any representation, act or omission of the other contrary to the provisions of this Agreement.

19. WAIVERS: No waiver by any party or any breach of this Agreement by the other shall be deemed to be a waiver of any preceding or succeeding breach of the same term or any other breach of this Agreement. No delay on the part of Producers in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies expressly specified in this Agreement are cumulative and not exclusive of any other rights or remedies either party would otherwise have.

20. HEADINGS: The headings of this Agreement are inserted only for the purpose of convenient reference, and it is recognized that they may not accurately or adequately describe the contents of the clauses they head. Such headings shall not be deemed to limit, cover or in any way affect the scope,

6

meaning or intent of this Agreement or any part thereof, nor shall they otherwise be given any legal effect.

21. RIGHT TO AUDIT: Linda shall have the right to examine the books and records of the Producers or their assigns at reasonable hours upon giving Producers notice in writing, but such examination may not occur more often than once every six (6) months. If there is a discrepancy in favor of the Producers of 5% or more the Producers will pay for the costs of the audit.

22. HOUSE SEATS: For productions where Producer has control of seating, Producer shall hold one (1) pair of adjoining house seats for Linda or her designee (but not for resale), for all performances of the Play in the first ten (10) rows in the center section of the orchestra. Additionally, Producers shall use best efforts to procure that Author shall each have the right to purchase two (2) additional pairs of seats in good locations for the first, official opening night. Such house seats shall be held for up to forty-eight (48) hours prior to the scheduled performance for purchase by the Author and shall be paid for by the Author at the regularly established box office prices.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

Linda Hirshman

Elizabeth Weber

Don Franzen

7